UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROLLS-ROYCE SOLUTIONS AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ACS MANUFACTURING, INC.,<br><br>Defendant. | Case No. 21-cv-11979<br>Honorable Judith E. Levy<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE (ECF No. 9)**

## I.    Introduction

In this breach of contract action, Defendant ACS Manufacturing, Inc.

seeks dismissal for lack of personal jurisdiction under Federal Rule of Civil

Procedure 12(b)(2) and for improper venue under Rule 12(b)(3) and 28

U.S.C. § 1406(a).  ECF No. 9.  Alternatively, ACS seeks transfer to the

Northern District of Texas under 28 U.S.C. § 1404(a).  Plaintiff Rolls-Royce

Solutions America, Inc. (RRSA) argues that jurisdiction and venue are

proper in this Court under a forum-selection clause.  After reviewing the

record, the Court **RECOMMENDS** that ACS's motion be **DENIED**.

## II.    Analysis

### A.

Upon the filing of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction over the defendant.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  "[T]he plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court has the discretion to decide the motion on the affidavits, to permit discovery to aid resolution of the motion, or to conduct an evidentiary hearing.  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012).

When the court relies only on the written submissions and affidavits "rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal."  *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citations and internal quotation marks omitted).  And when deciding a Rule 12(b)(2) motion on only the pleadings and affidavits, those documents must be viewed in a light most

2

favorable to the plaintiff, and the court should not weigh any conflicting assertions by the party moving to dismiss.  *Id.*

Viewing the evidence in a light most favorable to RRSA, the Court finds that it has personal jurisdiction over ACS.

**B.**

The personal jurisdiction requirement is waived when parties consent in a forum-selection clause to submit to the jurisdiction of a particular court. *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006); *Belanger, Inc. v. Car Wash Consultants, Inc.*, 452 F. Supp. 2d 761, 764 (E.D. Mich. 2006).  Michigan's long-arm statute also provides that personal jurisdiction can be established by the parties' consent if certain conditions are met, including that the "state is a reasonably convenient place for the trial of the action."  Mich. Comp. Laws §§ 600.701(3), 600.745(2)(b).

The parties dispute which of two forum-selection clauses is binding. RRSA argues that a forum-selection clause in its purchase orders designates Michigan as the proper forum.  ACS, in turn, says that the forum-selection clause in its price quotation designates Texas. Alternatively, ACS urges the Court to find neither clause binding.  ACS also argues that Michigan is not a reasonably convenient forum.  The Court first

3

addresses the enforceability of the competing forum-selection clauses and then addresses the convenience of the forum.

**1.**

"[N]ot all forum selection and choice of law clauses are necessarily valid; to be enforceable, forum selection and choice of law clauses must be validly incorporated into the terms of an enforceable contract." *Belanger*, 452 F. Supp. 2d at 764.  To determine whether the contract is enforceable, a federal court sitting in diversity applies state law. *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 388 (6th Cir. 2017).

After some negotiation between the parties, RRSA solicited bids from ACS and other potential suppliers for work on several projects.  ECF No. 9-5, PageID.477, ¶¶ 4-6; ECF No. 14-12, PageID.547, ¶¶ 4, 6-12.[1]  ACS provided a price quotation that included a forum-selection clause.  ECF No. 9-5, PageID.477, ¶ 6; ECF No. 9-2, PageID.463-467; ECF No. 15-1, PageID.568-569.  That clause provides that "Buyer and Seller agree that the exclusive venue for any suits brought to enforce or interpret or relating to this contract shall be in the state courts or United States district courts sitting in Grayson County, Texas."  ECF No. 9-2, PageID.467.

---

[1] RRSA was formerly known as MTU Onsite Energy Corp., the company designated on the price quotation and purchase orders.  *See* ECF No. 14-12, PageID.546, ¶ 1.

RRSA reviewed the price quotation and issued purchase orders to ACS for five projects with sites in Oklahoma, Oregon, and Georgia.  ECF No. 14-12, PageID.547, ¶¶ 5-7.  The purchase orders contain a forum-selection clause stating, "Supplier consents to the exclusive jurisdiction of Michigan courts."  *See, e.g.*, ECF No. 1-1, PageID.44 (capitalization modified).

This situation presents a typical "battle of the forms," which is governed by § 2-207 of the Uniform Commercial Code:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:
>> (a) the offer expressly limits acceptance to the terms of the offer;
>> (b) they materially alter it; or
>> (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Mich. Comp. Laws § 440.2207.  Here, the parties dispute whether ACS's price quotation or RRSA's purchase orders were the operative offer and whether ACS's performance was an acceptance of the terms in the purchase orders.

5

2em

**a.**

The Court first determines which of the parties' forms was the operative offer.  "Typically, a price quotation is considered an invitation for an offer . . .  [and] a buyer's purchase agreement submitted in response . . . is usually deemed the offer."  *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 572 (6th Cir. 1999) (citations and internal quotation marks omitted). But a price quotation may be considered an offer "if it is sufficiently detailed and it 'reasonably appear[s] from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract.'"  *Id.* (quoting *Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc., of Ill.*, 635 F. Supp. 1281, 1284 (N.D. Ill. 1986)); *see also Robert Bosch Corp. v ASC Inc.*, 195 F. App'x 503, 506 (6th Cir. 2006) (finding that a price quotation was an offer where it "stated the essential terms" of the agreement).  "[I]nclusion of a description of the product, price, quantity, and terms of payment may indicate that the price quotation is an offer rather than a mere invitation to negotiate."  *Dyno*, 198 F.3d at 572.  Courts examine the totality of the circumstances to determine the intent of the party submitting the quotation.  *Id.*

ACS's price quotation is titled a "quote" and includes descriptions of the work and technical specifications, quantities, and pricing for the goods.

ECF No. 9-2, PageID.463-466; ECF No. 15-1, PageID.568-569.  It includes shipping instructions and provides for delivery to Pryor, Oklahoma.  ECF No. 15-1, PageID.569.  This section also provides that payment is due "30 days from date the assemblies are available to ship."  ECF No. 9-2, PageID.467.

The detail in ACS's price quotation may be enough to find that it was an offer.  The quotation included essential terms such as price, quantity, specifications, location of delivery, and terms of payment.  *See Synergen Inc. v. FCA US LLC*, No. 16-cv-11842, 2020 WL 1333425, at *9 (E.D. Mich. Mar. 23, 2020) (holding that a reasonable jury could find a price quotation to be an offer where it described the product, price, quantity, and terms of payment); *Compass Auto. Group, LLC v. Denso Mfg. Tenn., Inc.*, No. 12-10919, 2013 WL 655112, at *1, 4 (E.D. Mich. Feb. 22, 2013) (holding that a proposal describing the products and specifying price, engineering, feasibility, delivery, and payment terms and conditions was an offer).  Finally, the parties negotiated before ACS submitted its price quotation.  *Challenge Mach. Co. v. Mattison Mach. Works*, 359 N.W.2d 232, 235 (Mich. Ct. App. 1984) (finding a proposal was an offer when the parties negotiated for several months before submitting the price quotation).

7

But other elements of ACS's price quotation suggest that it was merely an invitation for an offer.  The quotation alternately calls itself a "quote," a "contract," and a "purchase order."  ECF No. 9-2, PageID.463, 467; *see Holbrook v. Prodomax Automation Ltd.*, No. 1:17-cv-219, 2021 WL 4582161, at *5 (W.D. Mich. Oct. 6, 2021) (declining to decide as a matter of law that a quotation was an offer when it used "conflicting language, referring to itself as an 'offer,' a 'quotation,' and a 'proposal'"). Nor is it clear from the record whether the proposed prices represent ACS's final quotation, as RRSA's purchase order states that the "[p]ricing reflects a 5% discount taken as [a] negotiated payment term."  ECF No. 1-1, PageID.16; *see Synergen*, 2020 WL 1333425, at *9 (noting that a jury could be persuaded that a quotation was a "springboard for further negotiation" rather than an offer where the supplier "issued revised quotations later in the negotiation process").

The Court cannot decide as a matter of law whether ACS's price quotation was an offer or merely an invitation for an offer.  Instead, viewing the facts in the light most favorable to RRSA for this motion, the Court construes the quotation as an invitation for an offer and RRSA's purchase orders as the operative offer.  *See Air Prod.*, 503 F.3d at 549.

8

**b.**

The Court must next determine whether ACS accepted the terms of RRSA's purchase orders.  The purchase orders direct ACS to confirm acceptance "in writing without undue delay (using the order confirmation attached to the order form if available) unless [RRSA] waives this requirement."  ECF No. 1-1, PageID.33.  The transmittal emails also asked ACS to "provide confirmation of acceptance."  *See, e.g.*, ECF No. 14-3, PageID.521.  In response, ACS acknowledged receipt of all but one of the purchase orders.  ECF No. 9-5, PageID.478, ¶ 7; ECF No. 14-12, PageID.548, ¶¶ 8-12; ECF No. 14-3, PageID.521; ECF No. 14-4, PageID.524; ECF No. 14-6, PageID.529; ECF No. 14-9, PageID.536.  Although the record does not show that ACS expressly accepted the purchase orders, ACS performed by supplying and installing the goods.  ECF No. 9-5, PageID.478, ¶¶ 8-10; ECF No. 14-12, PageID.549, ¶ 14.

The UCC states that "[u]nless otherwise unambiguously indicated by the language or circumstances . . . an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances," including the shipment of goods.  Mich. Comp. Laws § 440.2206(1).  Although the purchase orders directed ACS to accept in writing using an order confirmation, "[i]f an offer suggests a

9

permitted mode of acceptance, other methods of acceptance are not precluded." *Sundram Fasteners Ltd. v. Flexitech, Inc.*, No. 08-CV-13103, 2009 WL 2351763, at *4 (E.D. Mich. July 29, 2009) (internal quotation marks omitted); *see also Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 910-11 (6th Cir. 1960).  Tendering performance is one permitted mode of acceptance.  *Sundram*, 2009 WL 2351763, at *4.  When ACS performed by delivering the goods to RRSA, it accepted the terms of RRSA's purchase orders.

ACS likens this case to two others holding that forum-selection clauses were invalid.  In *Belanger*, a seller mailed the buyer an invoice containing a forum-selection clause after the parties agreed to a contract. 452 F. Supp. 2d at 766.  Since the forum-selection clause was an added term that "materially altered" the contract, it was found non-binding under the UCC.  *Id.* (citing Mich. Comp. Laws § 440.2207(2)(b) (additional terms proposed in an acceptance become part of a contract between merchants unless they materially alter it)).  The same outcome was reached on similar facts in *Metropolitan Alloys Corp. v. State Metals Industries*, 416 F. Supp. 2d 561, 564-65, 567 (E.D. Mich. 2006).

Those cases are distinguishable from this one.  In both, the forum-selection clauses were part of forms submitted *after* an offer had been

10

made.  Here, the Court has determined for purposes of this motion that RRSA's purchase orders were the operative offer.  Because no acceptance sought to add terms to this offer, § 440.2207(2)(b) does not apply.

Finally, ACS argues that the Court should find neither forum-selection clause binding.  The cases ACS relies on are inapplicable, as they evaluated whether venue was proper and not whether forum-selection clauses were contractually binding.  *Powerscreen USA, LLC v. D & L Equip., Inc.*, No. 3:07CV-433-S, 2008 WL 2944994, at *2 (W.D. Ky. July 28, 2008) (declining to consider the parties' conflicting forum-selection clauses in determining whether to transfer venue under 28 U.S.C. § 1404(a)); *Long John Silver's, Inc. v. Pressdough of Bismark*, No. 08-129-KSF, 2008 WL 11346402, at *4-5 (E.D. Ky. June 16, 2008) (dismissing the case for improper venue under 28 U.S.C. § 1406(a) because enforcement of the forum-selection clause would be unreasonable or unjust).

If ACS is arguing that neither forum-selection clause is binding under Michigan's "knock-out rule," that rule does not apply.  The knock-out rule provides that conflicting terms in an offer and acceptance "are purged from the agreement and the resulting contract consists only of those provisions agreed upon by both parties, plus any applicable UCC gap fillers." *Spartech CMD, LLC v. Int'l Auto. Components Group N. Am., Inc.*, No. 08-

11

13234, 2009 WL 440905, at *6 (E.D. Mich. Feb. 23, 2009) (citing *Robert Bosch*, 195 F. App'x at 505).  Again, since the Court does not construe ACS's price quotation as an offer, no contractual terms conflict with the forum-selection clause in RRSA's purchase order.  RRSA's forum-selection clause is therefore valid and controlling.

**2.**

Michigan courts may hear a case under a forum-selection clause if the state "is a reasonably convenient place for the trial of the action."  Mich. Comp. Laws § 600.745(2)(b).  "[A] determination of what is a 'reasonably convenient' place for trial requires a determination whether Michigan is a logical venue that is well-suited for the purpose of deciding [an] action."  *Lease Acceptance Corp. v. Adams*, 724 N.W.2d 724, 734 (Mich. Ct. App. 2006).  Courts do not evaluate whether another venue would be more convenient but whether Michigan is reasonably convenient.  *Gen. Med. of Louisiana, P.C. v. Singletary*, No. 340298, 2019 WL 573385, at *8 (Mich. Ct. App. Feb. 12, 2019).  These factors guide the Court's analysis:

> (1) the private interest of the litigants, including the location of the parties, ease of access to sources of proof, the distance from the incident giving rise to the litigation, and other practical problems that contribute to the ease, expense, and expedition of the trial; (2) matters of public interest, including consideration of which state law will govern the case, potential administrative difficulties, and people concerned by the proceeding; and

(3) reasonable promptness on the part of the defendants in raising the issue of forum non conveniens dismissal.

*Lease Acceptance*, 724 N.W.2d at 735.

The private interest factors show that Michigan is a reasonably convenient forum.  ACS maintains that the matter should be litigated in Texas because ACS, its employees, third-party witnesses, and documents relating to the agreement are in Texas and much of the work was completed in Texas.  ECF No. 9-5, PageID.478-479, ¶¶ 14, 17, 19.  ACS also asserts that the RRSA employees involved in the negotiation and performance of the agreements are in Minnesota.  *Id.* at PageID.479, ¶ 16. But RRSA is in Michigan and presumably can obtain its Minnesota-based employees' cooperation.  Many documents related to the dispute are likely also in RRSA's possession—and in this digital age, those that are not can be easily transferred.  As for ACS's work, it was not confined to Texas but also took place in Oklahoma, Oregon, and Georgia—with more potential witnesses in those states.[2]  Under these facts, Texas would be an equally inconvenient forum for RRSA as Michigan would be for ACS.

---

[2] ACS downplays the claims about the project sites in Oregon and Georgia, arguing that the complaint only briefly addresses these sites.  But the work at these sites clearly forms part of the complaint.  RRSA details and attaches the purchase orders for these sites, alleges how ACS breached these contracts, and alleges the damages incurred in each project.  ECF No. 1, PageID.4, 11, ¶¶ 9(b)-(e), 24-27.

That ACS is in Texas and had no contacts with Michigan does not render Michigan an inconvenient forum.  Michigan courts recognize that "neither residency in other states nor alleged lack of contacts with a chosen forum prevents the forum from being reasonably convenient under M.C.L. § 600.745(2)."  *Umlaut, Inc. v. P3 USA, Inc.*, No. 2:19-cv-13310, 2020 WL 4016098, at *3 (E.D. Mich. July 15, 2020).  In a case involving a Michigan corporation and a California defendant who allegedly stole trade secrets while working in California, a court found that Michigan was a reasonably convenient forum.  *FCA US LLC v. Bullock*, No. 17-cv-13972, 2018 WL 1875597, at *3 (E.D. Mich. Apr. 19, 2018) ("Although Bullock does not live in Michigan, FCA is located here, proof can easily be accessed here, and Michigan state law will be applied to the claims[.]").

Because RRSA is in Michigan and the evidence is easily accessible from Michigan, this Court is a reasonably convenient forum.  Although some Texas witnesses may be outside the Court's subpoena power, no other state would be perfectly convenient given the potential witnesses in Minnesota, Oklahoma, Oregon, and Georgia.  *See ViSalus, Inc. v. Smith*, No. 13-10631, 2013 WL 2156031, at *7 (E.D. Mich. May 17, 2013) ("[Given] the location of Plaintiff and numerous witnesses in Michigan, the easy accessibility of electronic and physical evidence, the agreed selection of

14

Michigan law as the applicable law, and the lack of any other state where it would be perfectly convenient given the witnesses located in other states, Michigan is a reasonably convenient place for trial.").

Public interest considerations also support a finding that Michigan is a reasonably convenient forum. "Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions." *Turcheck v. Amerifund Fin., Inc.*, 725 N.W.2d 684, 688 (Mich. Ct. App. 2006). Allowing a party who is inconvenienced by a forum-selection clause to escape that obligation "on the basis of concerns that were within the parties' original contemplations would unduly interfere with the parties' freedom to contract and should generally be avoided." *Id.* at 690. RRSA's forum-selection clause also includes a Michigan choice-of-law provision. ECF No. 1-1, PageID.44. Assuming that this provision is enforceable, Michigan would have a public interest in having a Michigan court apply Michigan law to a case about a contract with a Michigan corporation as a party. *See United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 751 (E.D. Mich. 2014). While ACS argues that Texas has an interest in adjudicating a dispute involving a Texas corporation and work performed in Texas, that interest is no greater than Michigan's.

Though there is no dispute about the promptness of the present motion, this factor has no bearing on convenience.  *See Americorp Fin., L.L.C. v. Bacdamm Inv. Group, Inc.*, No. 312522, 2014 WL 198929, at \*4 (Mich. Ct. App. Jan 16, 2014).

Because RRSA's forum-selection clause is binding and Michigan is a reasonably convenient forum, the Court recommends that ACS's motion to dismiss under Rule 12(b)(2) be denied.

### C.

ACS seeks dismissal of the case for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a).  "'As with personal jurisdiction, [a] [d]efendant may waive objection to venue, and courts will generally enforce waivers made by agreement.'"  *Bullock*, 2018 WL1875597, at \*5 (quoting *ViSalus,* 2013 WL 2156031, at \*8) (finding that an enforceable forum-selection clause was a valid waiver of the requirement of proper venue). As described above, ACS consented to venue in this Court and expressly waived its right to challenge venue.  *See* ECF No. 1-1, PageID.44 ("[E]ach Party hereby waives, and agrees not to assert, by way of motion, as a defense, or otherwise . . . that the venue of the suit, action, or proceeding is improper").  Venue is therefore proper in this Court.  ACS's motion to dismiss under Rule 12(b)(3) and § 1406(a) be should be denied.

16

**D.**

Finally, ACS moves to transfer venue to the Northern District of Texas under 28 U.S.C. § 1404(a).  "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 (2013).  But if there is a valid forum-selection clause in a contract between the parties, it should control "[i]n all but the most unusual cases."  *Id.* at 66.  The party defying the forum-selection clause bears the burden of showing that exceptional circumstances merit transfer.  *Id.* at 63.  Exceptional cases "include those in which the public interest factors do not favor the designated forum, although 'those factors will rarely defeat a transfer motion.'"  *Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp. 3d 828, 834 (E.D. Mich. 2016) (quoting *Atl. Marine*, 571 U.S. at 64).

For the reasons discussed above, the public interest factors favor Michigan as the proper forum.  ACS has not met its burden of showing that Texas' interest in the case is any greater.  ACS's motion to transfer venue under § 1404(a) should be denied.

### III. Conclusion

The Court thus **RECOMMENDS** that ACS's motion to dismiss or transfer venue be **DENIED** (ECF No. 9).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: April 11, 2022

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of

18

objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 11, 2022.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager