UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROLLS-ROYCE SOLUTIONS
AMERICA INC.,

      Plaintiff,                          Case No. 21-cv-11979
                                           Hon. Matthew F. Leitman

v.

ACS MANUFACTURING, INC.,

      Defendant.

_____/

## ORDER (1) SUSTAINING DEFENDANT'S OBJECTIONS (ECF No. 17) TO REPORT AND RECOMMENDATION (ECF No. 16); AND (2) GRANTING DEFENDANT'S MOTION TO DISMISS (ECF No. 9)

In this action, Plaintiff Rolls-Royce Solutions America, Inc. ("Rolls-Royce") is suing Defendant ACS Manufacturing, Inc. ("ACS") for breach of contract and breach of warranty. On October 20, 2021, ACS moved to dismiss Rolls-Royce's Complaint for lack of personal jurisdiction. (*See* Mot., ECF No. 9.) The assigned Magistrate Judge then issued a Report and Recommendation (the "R&R") recommending that the Court deny ACS's motion. (*See* R&R, ECF No. 16.) Now before the Court are ACS's objections to the R&R. (*See* Objections, ECF No. 17.) For the reasons explained below, the Court **SUSTAINS** the objections and **GRANTS** ACS's motion to dismiss.

Rolls-Royce contends that ACS is subject to personal jurisdiction in this forum on a single ground: namely, that ACS consented to personal jurisdiction here when ACS agreed that Rolls-Royce's standard terms and conditions would be included in the parties' contracts. Those terms and conditions state, among other things, that ACS "CONSENTS TO THE EXCLUSIVE JURISDICTION OF MICHIGAN COURTS" (the "Michigan Forum Selection Clause" or the "Clause"). ACS denies that Rolls-Royce's terms and conditions are included in the parties' contracts. But it argues that even if the contracts do contain those terms and conditions, the Michigan Forum Selection Clause cannot provide a basis for personal jurisdiction because, on the facts of this case, it is unenforceable under Michigan law.

The Court agrees with ACS that the Clause is unenforceable here. A Michigan statute provides that where, as in this case, a forum selection clause provides the sole basis for the assertion of personal jurisdiction over a defendant, the clause may be enforced only if, among other things, Michigan is "a reasonably convenient place for the trial of the action." Mich. Comp. Laws § 600.745(2) (the "Reasonably Convenient Place Statute"). And Michigan is not a "reasonably convenient place" for this trial. The facts and circumstances underlying this dispute have no connection to Michigan. None of the contracts at issue involved work to be performed in Michigan. None of the witnesses are located here. None of the evidence is located

2

here.  None of the relevant communications between the parties were sent to or from Michigan.  None of the relevant conduct occurred here.  And while Rolls-Royce has its principal place of business in Michigan, there is no indication in the record that any Rolls-Royce personnel in Michigan will play any role in this action.  For these reasons, Michigan is not a "reasonably convenient" forum for trial.  Accordingly, the Michigan Forum Section Clause is unenforceable, and ACS is not subject to personal jurisdiction here.

# I

## A

ACS is a Texas-based manufacturer of electrical supplies. (*See* Compl. at ¶ 5, ECF No. 1, PageID.2; Decl. of Dan V. Knox ("Knox Decl.") at ¶¶ 3–4, ECF No. 9-5, PageID.477.)  Rolls-Royce is a Delaware corporation with its principal place of business in Michigan. (*See* Compl. at ¶ 4, ECF No. 1, PageID.2.)  Rolls-Royce was formerly known as "MTU America Inc." and previously did business as "MTU Onsite Energy Corporation." (*See* Decl. of Christopher Lowry ("Lowry Decl.") at ¶ 1, ECF No. 14-12, PageID.546.)  During the relevant time period, Rolls-Royce had offices under the "MTU" name in Mankato, Minnesota and Chicago, Illinois. (*See* Purchase Order No. 486095054, ECF No. 1-1, PageID.16 (identifying MTU America Inc., office in Mankato, Minnesota and MTU Onsite Energy Corporation office in Chicago, Illinois).)

3

Beginning in 2018, Rolls-Royce issued a series of purchase orders (collectively, the "PO's") to ACS for ACS to supply and install materials on five Rolls-Royce projects located outside of Michigan: one in Pryor, Oklahoma; another in Social Circle, Georgia; and three in Prineville, Oregon (the "Project Sites"). (*See* Compl. at ¶¶ 9.a–9.e, ECF No. 1, PageID.3–8.)  Rolls-Royce sent the PO's to ACS at its Denton, Texas, office. (*See* PO's, ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5.)[1]

None of the PO's included a Michigan address, a Michigan phone number, or a Michigan-based contact person. (*See id.*)  All of the PO's identified Lisa Nagel as the "Contact Person" at Rolls-Royce, and they listed a telephone number with a Minnesota area code under her name.  Some PO's listed Rolls-Royce's office in Mankato, Minnesota as its contact address and requested remittance to its office in Chicago, Illinois. (*See, e.g.*, PO No. 4861095054, ECF No. 1-1, PageID.16.)  Others listed only a PO Box in Indianapolis, Indiana as the billing address. (*See, e.g.*, PO No. 4861095055, ECF No. 1-1, PageID.49.)  The PO's requested delivery to, variously, the Project Sites or to the Minnesota office. (*See, e.g.*, PO No. 4861095054, ECF No. 1-1, PageID.17 (requesting delivery to Pryor, OK); PO No. 4861085986, ECF No. 1-3, PageID.125 (requesting delivery to Social Circle, GA);

---

[1] Rolls-Royce sent some of these PO's under the letterhead of its d/b/a, "MTU Onsite Energy," which those PO's identify as a "Rolls-Royce Power Systems Company." (*E.g.*, PO No. 4861095054, ECF No. 1-1, PageID.16.)  Rolls-Royce sent other POs under joint MTU and Rolls-Royce letterhead. (*E.g.*, PO No. 4861095055, ECF No. 1-1, PageID.49.)

PO No. 4861088933, ECF No. 1-4, PageID.199 (requesting delivery to Prineville, OR); PO No. 4861109977, ECF No. 1-1, PageID.66 (requesting delivery to Mankato, MN).)

Rolls-Royce alleges that the PO's set forth the terms of the parties' contracts. (*See* Compl. at ¶ 9, ECF No. 1, PageID.3.)  And the PO's purported to incorporate Rolls-Royce's standard terms and conditions into those contracts.[2] (*See* Lowry Decl. at ¶ 13, ECF No. 14-12, PageID.549.)  As relevant here, these terms and conditions contained the Michigan Forum Selection Clause.  That Clause provided as follows:

> The Procurement Conditions and any claim, controversy, or dispute arising under or related to the Procurement Conditions, the relationship of the parties, or the interpretation and enforcement of the rights and duties of the parties will be governed by the laws of the State of Michigan without regard to any conflicts of law principles. SUPPLIER CONSENTS TO THE EXCLUSIVE JURISDICTION OF MICHIGAN COURTS. ANY ACTION ARISING OUT OF OR RELATING TO THE PROCUREMENT CONDITIONS WILL BE BROUGHT IN THE STATE OF MICHIGAN.

(*E.g.,* PO No. 4861095054, ECF No. 1-1, PageID.44.)  Other than this Clause, there is no reference to Michigan in any of the PO's.

---

[2] Some PO's spelled out Rolls-Royce's terms and conditions. (*See, e.g.,* PO No. 4861095054, ECF No. 1-1, PageID.33–48.)  Other PO's provided a link to the terms and conditions. (*See, e.g.,* PO No. 4861095055, ECF No. 1-1, PageID.65.)

**B**

ACS has presented evidence that during the course of the parties' relationship, it had no contact with any Rolls-Royce employees in Michigan. (*See* Knox Decl. at ¶¶ 5, 15–18, ECF No. 9-5, PageID.477, 479.)  Moreover, none of the PO's or email correspondence between the parties that are currently in the record appear to involve anyone located in Michigan at all.  Instead, the principal individuals involved on Rolls-Royce's side in the parties' correspondences appear to be (1) Steven Toedter, whose email signature identifies him as the "Project Engineer" at Rolls-Royce's Mankato, Minnesota office (*see, e.g.,* 12/26/2017 Email, ECF No. 14-2, PageID.519); (2) Christopher Lowry, the "Sr. Manager Strategic Purchasing" at the Mankato, Minnesota office (*see, e.g.,* 4/16/2018 Email, ECF No. 14-7, PageID.532); and (3) Nagel, the "Strategic Buyer" whose email signature lists as having a phone number with an area code associated with Mankato, Minnesota (*see, e.g.,* 2/27/2018 Email, ECF No. 14-3, PageID.521).

With respect to the Pryor, Oklahoma project in particular – which appears to be a focal point of the parties' dispute – ACS asserts that the "negotiations [...] were largely accomplished via phone calls and emails between ACS employees in Denison, Texas and MTU employees operating out of Mankato, Minnesota." (Knox Decl. at ¶ 5, ECF No. 9-5, PageID.477.)  "During the negotiations" for this project,

ACS states that its "representatives never spoke to or emailed any [MTU or Rolls-Royce] employees known to reside in Michigan." (*Id.*)

Rolls-Royce has not disputed any of ACS's claims that ACS had no contact with anyone in Michigan.  Nor has Rolls-Royce presented any evidence to the contrary.

## C

On August 25, 2021, Rolls-Royce filed this action against ACS. (*See* Compl., ECF No. 1.)  Rolls-Royce alleges that ACS breached the parties' contracts "by failing to supply and install certain goods in accordance with applicable contract requirements, failing to complete work on the Projects and failing to correct defective work on the Projects." (*Id.* at ¶ 1, PageID.1–2.)  In particular, Rolls-Royce alleges that "feeder cables and bus duct supplied and installed by ACS" on the Pryor, Oklahoma project (*id.* at ¶ 14, PageID.8) – which ACS "designed, manufactured, installed, tested, and packaged in Denison, Texas" (Knox Decl. at ¶ 8, ECF No. 9-5, PageID.478) – "failed to meet both applicable code and the size requirements" of the contract. (Compl. at ¶ 14, ECF No. 1, PageID.8.)  Rolls-Royce further alleges that ACS failed to complete all of the installation, painting, retrofitting, and manufacturing work it was required to do on the other Project Sites. (*See id.* at ¶¶ 24–27, PageID.11.)  Rolls-Royce asserts one count each of breach of contract and breach of warranty. (*See id.* at ¶¶ 28–40, PageID.11–14.)

7

On October 20, 2021, ACS moved to dismiss for lack of personal jurisdiction under Federal Rule of Procedure Rule 12(b)(2).[3] (*See* Mot., ECF No. 9.)  ACS first argues that the Michigan Forum Selection Clause is the only possible basis for the assertion of personal jurisdiction over it (ACS) in Michigan.  ACS then contends that the Clause may not form the basis of personal jurisdiction because it (ACS) did not agree to Rolls-Royce's terms and conditions which contained the Clause. (*See id.*)  In the alternative, ACS argues that the Clause is unenforceable under Michigan law. (*See id.*)

Rolls-Royce does not dispute that the Michigan Forum Selection Clause provides the sole basis for the assertion of personal jurisdiction over ACS. (*See* Resp., ECF No. 14, PageID.502 ("[P]ersonal jurisdiction exists in Michigan over ACS because of ACS's consent to jurisdiction under the terms of [the PO's].").)  But Rolls-Royce insists that ACS did agree to the terms and conditions containing the Clause, and Rolls-Royce argues that the Clause is enforceable. (*See id.*, PageID.502–514.)

---

[3] ACS also moved to dismiss for improper venue and to transfer this case to the Northern District of Texas pursuant to a forum selection clause in ACS's own purported contract documents.  The Court need not and does not reach those arguments.

The Court referred ACS's motion to the assigned Magistrate Judge on October 25, 2021. (*See* Referral Order, ECF No. 10.)  On April 11, 2022, the Magistrate Judge issued the R&R in which she recommended that ACS's motion be denied. (*See* R&R, ECF No. 16.)  As relevant here, the Magistrate Judge recommended that the Court find that (1) ACS agreed to Rolls-Royce's terms and conditions which contained the Michigan Forum Selection Clause; and (2) the Clause is enforceable under Michigan law. (*See id.*)  She therefore recommended that the Court conclude that it has personal jurisdiction over ACS. (*See id.*)

ACS timely objected to the R&R on April 25, 2022. (*See* Objections, ECF No. 17.)  In its objections, ACS disputed, among other things, the Magistrate Judge's finding that the Michigan Forum Selection Clause is enforceable under Michigan law. (*See id.*, PageID.612–616.)  Rolls-Royce responded to ACS's objections on May 16, 2022. (*See* Resp. to Objections, ECF No. 18.)  ACS filed a reply on May 18, 2022. (*See* Reply, ECF No. 20.)  The Court concludes that it may resolve ACS's objections without oral argument. *See* E.D. Mich. Local Rule 7.1(f).

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of a report

and recommendation to which the parties did not object. *See Thomas v. Arn*, 474

U.S. 140, 149 (1985).

## III

The parties agree that the sole basis for the assertion of personal jurisdiction

over ACS in this forum is the Michigan Forum Selection Clause.  However, under

the circumstances of this case, Michigan law precludes enforcement of that Clause.

Thus, even if ACS agreed to the Clause – a question the Court need not and does not

decide here – the Court may not assert personal jurisdiction over ACS based upon

the Clause.

## A

## 1

ACS moves to dismiss this action under Federal Rule of Civil Procedure

12(b)(2) for lack of personal jurisdiction.  "The plaintiff bears the burden of

establishing through specific facts that personal jurisdiction exists over the non-

resident defendant, and the plaintiff must make this demonstration by a

preponderance of the evidence." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir.

2012) (internal quotation marks omitted).  Where, as here, a court does not hold an

evidentiary hearing, "the plaintiff need only make a prima facie case that the court

has personal jurisdiction." *Id.* (internal quotation marks omitted).  The Court does

"not weigh the facts disputed by the parties but instead consider[s] the pleadings in

the light most favorable to the plaintiff." *Id.*  The Court may, however, "consider the defendant's undisputed factual assertions." *Id.*

**2**

In a federal diversity action, "the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).  "A federal court must analyze jurisdiction in a two-step process. First, the court must determine if state law, here Michigan law, grants the court authority to exercise personal jurisdiction over the defendant. Second, the court must determine if the exercise of personal jurisdiction over the defendant satisfies the Fourteenth Amendment's Due Process Clause." *In Re Trade Partners, Inc., Investors Litigation*, 627 F. Supp. 2d 772, 776, 777 (W.D. Mich. 2008).

A valid contractual forum selection clause may be sufficient to satisfy both steps in the jurisdiction analysis.  As to the first step, Michigan law "permits parties to contractually agree, in advance, to personal jurisdiction[.]" *Omne Fin., Inc. v. Shacks, Inc.*, 596 N.W.2d 591, 595 (Mich.1999); *see also In Re Trade Partners Inc.*, 627 F. Supp. 2d at 778 (concluding that forum-selection clause satisfied Michigan law with respect to the exercise of personal jurisdiction over nonresident defendant). As to the second step, "[a] freely-negotiated forum-selection provision that is not

11

unreasonable or unjust 'does not offend due process.'" *Id.* at 779 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985)).

"When a federal court sitting in diversity exercises personal jurisdiction over a party pursuant to a forum-selection clause, state law controls the question of whether that clause is enforceable." *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 388 (6th Cir. 2017).[4]   Accordingly, the Court turns to Michigan law to determine whether the Michigan Forum Selection Clause is enforceable – and thus whether it may form the basis for the assertion of personal jurisdiction over ACS.

## B

### 1

While Michigan law generally "favors forum-selection clauses," *Stone Surgical*, 858 F.3d at 388, the Michigan Legislature has imposed important limitations upon the enforcement of such clauses when they form the sole basis of a court's personal jurisdiction over a defendant.   Under the Reasonably Convenient Place Statute, where a forum selection clause provides "the only basis for the exercise of jurisdiction," a trial court "shall entertain the action" only if, among other things, Michigan "is a reasonably convenient place for the trial of the action." Mich.

---

[4] This stands in contrast to situations where a forum selection clause is "not raised to obtain personal jurisdiction" over a defendant. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 n.6 (6th Cir. 2009).  In those situations, the enforceability of the forum selection clause "is governed by federal law." *Id.* at 828.

Comp. Laws § 600.745(2).  The history and plain language of this statute confirm that it was intended, in large part, to secure for trial courts the discretion to decline enforcement of forum selection clauses that purport to compel litigation in Michigan when Michigan is not a logical and convenient forum.

Start with the history. The Reasonably Convenient Place Statute "emanated from a recommendation of the Michigan Law Revision Commission." *Lease Acceptance Corp. v. Adams*, 724 N.W.2d 724, 734 n. 10 (Mich. App. 2006).  The Commission is a body created by the Michigan Legislature in order to, among other things, (1) "[e]xamine the […] statutes of this state […] for the purpose of discovering defects and anachronisms in the law and recommending needed reforms," (2) "[r]eceive and consider proposed changes in the law recommended by the American law institute, the national conference of commissioners on uniform state laws," and (3) "[r]ecommend changes in the law it considers necessary in order to modify or eliminate antiquated and inequitable rules of law, and bring the law of this state into harmony with modern conditions." Mich. Comp. Laws § 4.1403(1)(a–b, d).

In 1972, the Commission considered whether to recommend adoption of the Model Choice of Forum Act that had been proposed by the National Conference of Commissioners on Uniform State Laws (the "Model Act").  The Model Act provided, among other things, that a trial court should enforce a forum selection

13

clause that forms the sole basis of personal jurisdiction over the defendant only if the forum was "a reasonably convenient place for trial." *Model Choice of Forum Act*, reprinted at MICHIGAN LAW REVISION COMMISSION, SEVENTH ANNUAL REPORT 78, 79 (1972).  In connection with the Commission's evaluation of the Model Act, it received a report from Professor James Martin of the University of Michigan Law School. *See* James A. Martin, *Recommendations on the Adoption in Michigan of the Model Choice of Forum Act*, *in* MICHIGAN LAW REVISION COMMISSION, SEVENTH ANNUAL REPORT 75 (1972).  Professor Martin recommended adoption of the Model Act because "the present state of Michigan law […] lack[ed] some of the safeguards" found in the Act, including, in particular, the safeguard that allowed enforcement of forum selection clauses designating Michigan as a forum only when Michigan was "reasonably convenient place for trial." *Id.* at 75.

The Commission agreed with Professor Martin that the Model Act would "add a reasonable and desirable limitation on the power to exercise jurisdiction based upon prior consent." MICHIGAN LAW REVISION COMMISSION, SEVENTH ANNUAL REPORT 60 (1972).  The Commission therefore recommended that the Michigan Legislature should adopt the "explicit safeguards provided by the Model Act," *id.*, and the Legislature did so. *First Nat. Monetary Corp. v. Chesney*, 514 F. Supp. 649, 655 (E.D. Mich. 1980) (explaining that the Michigan Legislature "enacted" the

14

Model Act in 1974).[5]  As one of the principal drafters of the Model Act explained,

these safeguards were designed to give courts discretion "to refuse to entertain [an]

action, although [that court] ha[d] been designated by the parties as a proper forum"

through a forum selection clause. Willis L.M. Reese, *The Model Choice of Forum*

*Act*, 17 AM. J. COMP. L. 292 (1969).[6]

Like this history, the language of the Reasonably Convenient Place Statute

confirms that it was intended, in large part, to preserve a trial court's discretion

concerning whether to enforce a forum selection clause that formed the sole basis

for the assertion of personal jurisdiction over a defendant.  As the Michigan Court

of Appeals has explained, the Reasonably Convenient Place Statute "requires that

[a] trial court in the first instance determine whether Michigan is a 'reasonably'

convenient forum for trial. 'Reasonably' denotes the balancing of factors, which in

turn requires the exercise of some judicial discretion." *Adams,* 724 N.W.2d at 732.

---

[5] Given this background, the report of the Commission and Professor Martin's analysis of the Model Act both provide some helpful context for understanding the Reasonably Convenient Place Statute. *See First Nat. Monetary Corp.*, 514 F. Supp. at 655 (drawing upon these sources in construing and applying the statute).

[6]As other leading scholarly commentators on forum selection clauses have observed, the Model Act "takes a relatively restrained view as to when consent-to-jurisdiction clauses should be enforced." John Coyle & Katherine C. Richardson, *Enforcing Inbound Forum Selection Clauses in State Court*, 53 Ariz. St. L.J. 65, 87 (Spring, 2021).  Indeed, "the preponderance of cases where the courts have refused to enforce consent-to-jurisdiction clauses on the ground that the chosen forum is inconvenient come from cases where the judge was applying the Model Act." *Id.* at 113.

That court has further explained that a trial court's discretionary assessment of whether Michigan is a reasonably convenient place for trial "must be affirmed" so long as it "falls within a 'principled range of outcomes.'" *Id.* at 733 (quoting *Coblentz v. Novi*, 719 N.W.2d 73, 83 (Mich. 2006)).

**2**

In *Adams*, the Michigan Court of Appeals provided standards to guide a trial court's exercise of discretion when evaluating whether Michigan is a reasonably convenient forum. *See id.* at 734.[7]  The Court of Appeals explained that Michigan is a "reasonably convenient place for trial" if it is "a logical venue that is well-suited for deciding th[e] action." *Id.*  The court added that in making that assessment, a trial court should "look to the analogous forum non conveniens [standard] for guidance." *Id.*  More specifically, a trial court should apply what have come to be "known as the '*Cray* factors'" – a list of *forum non conveniens* criteria "set forth in *Cray v. General Motors Corp.*, 389 Mich. 382, 395-96, 207 N.W.2d 393 (1973)." *Id.* at 735. "Under *Cray*, a trial court must consider the plaintiff's choice of forum and 'weigh

_____

[7] The Michigan Supreme Court has not yet decided how a court should assess whether Michigan is a "reasonably convenient place for trial."  But, the Michigan Supreme Court has cited *Adams* with approval, *see Lease Acceptance Corp. v. Abel*, 767 N.W.2d 656, 657 (Mich. 2008) (citing *Adams*, 724 N.W.2d 724), and thus there is reason to believe that the Michigan Supreme Court would adopt the analytical framework from *Adams*. *See Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 360 (6th Cir. 2012) (explaining that in a diversity case, a federal court must predict how a state's highest court would decide a question arising under the laws of that state).

carefully the relative advantages and disadvantages of jurisdiction and the ease of and obstacles to a fair trial in this state.'" *Id.* (quoting *Cray*, 207 N.W.2d at 399.)

The *Cray* factors fall under three categories:

> (1) the private interest of the litigants, including the location of the parties, ease of access to sources of proof, the distance from the incident giving rise to the litigation, and other practical problems that contribute to the ease, expense, and expedition of the trial; (2) matters of public interest, including consideration of which state law will govern the case, potential administrative difficulties, and people concerned by the proceeding; and (3) reasonable promptness on the part of the defendants in raising the issue of forum non conveniens dismissal.

*Id.* The *Cray* factors have also been articulated as containing the following "subparts" – some of which echo the factors noted in the above excerpt:

1. The private interest of the litigant.

   a. Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses;

   b. Ease of access to sources of proof;

   c. Distance from the situs of the accident or incident which gave rise to the litigation;

   d. Enforc[ea]bility of any judgment obtained;

   e. Possible harassment of either party;

   f. Other practical problems which contribute to the ease, expense and expedition of the trial;

   g. Possibility of viewing the premises.

2. Matters of public interest.

    a. Administrative difficulties which may arise in an area which may not be present in the area of origin;

    b. Consideration of the state law which must govern the case;

    c. People who are concerned by the proceeding.

3. Reasonable promptness in raising the plea of Forum non conveniens.

*Id.*

**3**

In applying the *Cray* factors to this case, the Court concludes that Michigan is not a reasonably convenient place for trial. The Court addresses each of the factors below.

**<u>Private Interest Factors</u>**

*Location of the Parties*: ACS is a Texas-based company with no presence in Michigan. While Rolls-Royce maintains its principal place of business in Michigan, there is no indication in the record before the Court that its Michigan offices had any connection to the events underlying this dispute. Instead, the evidence before the Court shows that Rolls-Royce interacted with ACS and supervised ACS's work through its Minnesota offices and may have used addresses in Chicago and Indianapolis to receive and/or process ACS's payments. Moreover, there is no

evidence in the record that any Rolls-Royce employee from the company's Michigan office will play any role in the litigation of this dispute.  For instance, Rolls-Royce has neither suggested that it employs in-house counsel in its Michigan offices who will be involved in supervising this litigation, nor has Rolls Royce presented any evidence that the outcome of this litigation will have any real-world impact on its operations and/or employees here in Michigan.  Thus, for purposes of this action, it is appropriate to treat the relevant location of Rolls-Royce as lying outside of Michigan.  Accordingly, this factor weighs against a finding that Michigan is a reasonably convenient forum.

*Ease of Access to Sources of Proof*:  There is no indication in the record that any witness or evidence of any kind is in Michigan.  Rather, it appears that all witnesses and evidence are located outside of Michigan – where the parties' representatives reside (Texas and Minnesota) and/or near the Project Sites (Oklahoma, Oregon, and Georgia).  Thus, if this case was tried in Michigan, it seems that every single witness for both parties would need to travel here and that all of the evidence would need to be sent here.  While these burdens may not be substantial, they weigh against a finding that Michigan is a reasonably convenient forum.

*Distance from the Incident Giving Rise to the Litigation*:  This litigation arises from the parties' contractual relationship and from ACS's alleged defective production and installation of certain electrical components and ducts.  The parties

19

primarily conducted their relationship from their offices in Minnesota and Texas, the allegedly-faulty production work occurred in Texas (*see, e.g.,* Knox Decl. at ¶ 8, ECF No. 9-5, PageID.478), and ACS delivered and installed the products at the Projects Sites in Oklahoma, Oregon, and Georgia. (*See, e.g., id.*)  Accordingly, all of the conduct giving rise to this dispute took place far from Michigan.  Thus, this factor weighs against a finding that Michigan is a reasonably convenient forum.

*Other Practical Problems Contributing to the Ease, Expense, and Expedition of the Trial*: To the extent there are practical problems beyond those mentioned above, this factor cannot weigh in favor of Michigan.  As noted above, there is nothing connecting this dispute to Michigan.  Accordingly, holding this action in Michigan would offer no practical advantage; it would only present potential difficulties for the parties.

*Availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of willing witnesses*: In this Court, the parties would be able to obtain compulsory process via Federal Rule of Civil Procedure 45.  Michigan is thus as convenient as any other state with respect to that aspect.  This factor is therefore neutral.

*Enforceability of any judgment obtained:* A judgment rendered in this case in any forum in the United States would be entitled to full faith and credit in any other state.  This factor is therefore neutral.

*Possible harassment of either party*: Neither party has alleged harassment. This factor is therefore neutral.

*Possibility of viewing the premises*. To the extent that any of the Project Sites needs to be viewed, that viewing would occur far from Michigan.  This factor, if relevant, thus weighs against a finding that Michigan is a reasonably convenient forum.

### *Public Interest Factors*

*Which State Law Will Govern the Case*:  The Court assumes for purposes of this Order that Rolls-Royce's terms and conditions govern, and thus that Michigan law applies.  The relevant Michigan law is Michigan's Uniform Commercial Code (the "UCC") – the statutory scheme that governs contracts that are primarily for the sale of goods.[8]  As the name implies, Michigan's UCC is modeled after a uniform law, and it is therefore reasonable to presume that judges in other states will have no difficulty applying Michigan's UCC to the parties' dispute.  Thus, while this factor weighs in favor of a finding that Michigan is a reasonably convenient forum, the Court declines to give it substantial weight in the overall balance.

---

[8] Both parties here acknowledge that the contracts at issue here are for goods and are thus subject to the UCC. (*See* Resp., ECF No. 14, PageID.502 ("Because the parties' agreement involved the sale of goods, Michigan law regarding the Uniform Commercial Code ("UCC") applies."); Reply, ECF No. 15, PageID.560–561 (citing to UCC and related caselaw in arguing that Rolls-Royce's contract documents do not apply).)

*Potential Administrative Difficulties*: These difficulties occur "when litigation is piled up in congested centers instead of being handled at its origin." *Radeljak v. Daimlerchrysler Corp.*, 719 N.W.2d 40, 45 (Mich. 2006).  Here, this Court is not uniquely over-burdened.  Thus, this factor weighs in favor of a finding that Michigan is a reasonably convenient forum.

*People Concerned by the Proceeding*: This factor accounts for the fact that "[t]here is a local interest in having localized controversies decided at home." *Radeljak*, 719 N.W.2d at 46.  The controversy underlying this action is in no way "localized" in Michigan.  As explained in detail above, it has its roots in communications and conduct that occurred outside of – and often far from – Michigan.  And the fact that Rolls-Royce happens to have its headquarters here does not convert the dispute into one that substantially concerns the people of Michigan. For these reasons, this factor weighs against a finding that Michigan is a reasonably convenient forum.

### ***Reasonable Promptness in Raising the Objection***

ACS promptly raised its challenge to the enforceability of the Michigan Forum Selection Clause in its motion to dismiss.  Thus, this factor weighs in favor of ACS's contention that the Court should not enforce the Clause.  But the Court does not assign much weight to this factor.

* * *

22

For the reasons explained above, the private interest factors, collectively, weigh strongly against a finding that Michigan is a reasonably convenient forum; the public interest factors, collectively weigh only slightly in favor of such a finding; and the promptness-of-objection factor weighs slightly against such a finding.  The Court thus concludes, in the exercise of its discretion, the overall balance of the *Cray* factors weighs against a finding that Michigan is a reasonably convenient forum for a trial this action.

**4**

Notably, the Michigan Supreme Court has held that a Michigan trial court reasonably exercised its discretion when it found under similar circumstances that Michigan was not a reasonably convenient place for trial. *See Lease Acceptance Corp. v. Abel*, 767 N.W.2d 656 (Mich. 2009).   In *Abel*, Lease Acceptance, a Michigan-based computer leasing company, sued dozens of non-Michigan residents in Michigan state court for failing to make payments on their leased computers. *See Lease Acceptance Corp. v. Abel*, 2008 WL 4958799, at *2 (Mich. Ct. App. Nov. 20, 2008).[9]  The defendants moved to dismiss for lack of personal jurisdiction. *See id.* They acknowledged that their leases contained a forum selection clause which stated that they "CONSENTED TO THE PERSONAL JURISDICTION OF ANY STATE

---

[9] The citation above is to the Michigan Court of Appeals decision in *Abel*.  That decision contains an explanation of the factual background of the case.   The Michigan Supreme Court's order in *Abel* does not recite the facts.

23

OR FEDERAL COURT LOCATED IN THE STATE OF MICHIGAN WITH RESPECT TO ANY ACTION ARISING OUT OF THE LEASE," but they argued that that provision was unenforceable under the Reasonably Convenient Place Statute. *Id.* Lease Acceptance countered with evidence that Michigan was a logical forum for the action. For instance, Lease Acceptance showed that the leases required the defendants to make lease payments to Lease Acceptance "in Michigan" and thus that the alleged breaches at issue occurred here. *Id.* at *5. Lease Acceptance also presented evidence that it maintained the lease agreements and other documentary evidence concerning the leases "in Michigan." *Id.*

The trial court concluded that on these facts, "the *Cray* factor[s] strongly favored the Defendants." *Id.* (quoting trial court ruling). The trial court thus held that the forum selection clause in the lease was unenforceable under the Reasonably Convenient Place Statute. *See id.*

The Michigan Court of Appeals reversed. That court conducted its own analysis of the *Cray* factors and concluded that all of the factors were essentially neutral except for "the choice of law factor." *Id.* That factor "favored Michigan." *Id.* The Court of Appeals thus concluded that "under the *Cray* framework," Michigan "would be the favored forum." *Id.* The court further stressed that "[i]n Michigan, a party seeking to avoid enforcement of a forum selection clause bears a 'heavy burden' of showing that the clause should not be enforced." *Id.* (quoting

24

*Turcheck v. Ameridun Fin., Inc.*, 725 N.W.2d 684, 689 (Mich. App. 2006)).   The court summed up its holding as follows:

> Considering the fact that the parties in this case agreed to Michigan as a forum by contract, any inconvenience "should have been apparent to [defendants] when ... [they] agreed to the forum-selection clause." *Id.* at 350, 725 N.W.2d 684. Prevailing on none of the *Cray* factors, defendants have not established that the negotiated forum, Michigan, is not a "reasonably convenient" forum for litigation. Therefore, defendants are precluded from challenging the forum selection clause based on the purported inconvenience of the negotiated location.
>
> Under the circumstances, we conclude that the trial court abused its discretion by granting the motion for summary disposition and dismissing the matter based on its determination that Michigan is not a "reasonably convenient" forum to litigate this case.

*Id.* at **7–8.

The Michigan Supreme Court then reversed the Court of Appeals.   The Supreme Court held that "[t]he trial court did not abuse its discretion in determining that Michigan was not 'a reasonably convenient place for the trial of the action,' MCL 600.745(2)(b), when considering the factors supplied in *Cray*." *Abel*, 767 N.W.2d at 657.   The Michigan Supreme Court delivered this ruling in a peremptory order that did not explain the court's reasoning, and thus the order may not establish any broadly-applicable rules concerning how to determine whether Michigan is a reasonably convenient place for trial.   But the order necessarily establishes, at a minimum, that the trial judge in *Abel* did not abuse his discretion when he ruled that

Michigan was not a reasonably convenient forum for trial even though (1) the defendants had agreed to litigate in Michigan, (2) the defendants had agreed that Michigan law governed; (3) the alleged breaches of leases occurred in Michigan, and (4) Lease Acceptance maintained some relevant evidence here.

*Abel* indicates that this Court is reasonably exercising its discretion in determining that Michigan is not a reasonably convenient forum for trial.  Indeed, the case for Michigan as a logical forum for trial in *Abel* was *stronger* than it is here because, unlike in this case, in *Abel* there were connections between Michigan and the parties' dispute: there was evidence that the defendants' alleged breaches of contract occurred in Michigan and that Lease Acceptance maintained relevant evidence in Michigan.  Simply put, *Abel* suggests that this Court's finding that Michigan is not a reasonably convenient place for trial falls within a "principled range of outcomes." *Adams*, 724 N.W.2d at 733. *See also Banc of Am. Leasing & Cap., LLC v. Bortolotti Const., Inc.*, 2011 WL 7788018, at *3 (Mass. Super. Jan. 13, 2011) (applying Michigan law) (citing *Abel*, exercising its discretion under the Reasonably Convenient Place Statute, and holding that Michigan was not a reasonably convenient forum for trial where, as in this case, "[t]here [was] nothing in the record connecting Michigan to this case. None of the witnesses or parties

[were] located there, and the underlying transaction did not take place in Michigan. Evidence [was] also not in Michigan.").[10]

**5**

Rolls-Royce offers three arguments as to why Michigan qualifies as a reasonably convenient place for trial under the Reasonably Convenient Place Statute. None persuade the Court to adopt that conclusion.

---

[10] Another Judge on this Court has suggested that "the Michigan Supreme Court's finding [in *Abel*] that the trial court did not abuse its discretion [is] relatively valueless as precedent on this question because the trial court's reasoning and considerations are not known." *ViSalus, Inc. v. Smith*, 2013 WL 2156031, at *7 n.11 (E.D. Mich. May 17, 2013). However, the trial court's "reasoning and considerations" in *Abel* were not entirely unknown. The trial court's "ultimate conclu[sion]" was quoted verbatim in the Court of Appeals decision that the Supreme Court reviewed. *Abel*, 2008 WL 4958799, at *5. More importantly, the relevant facts in *Abel* are known because they were set forth and addressed in the Court of Appeals decision that the Supreme Court reviewed. Thus, we know the pertinent factual record on which the trial court exercised its discretion. For these reasons and those explained above, the Court does not view *Abel* as "valueless." The Supreme Court's order in *Abel* fairly stands for the proposition that under the circumstances as described by the Court of Appeals in that case, it was not an abuse of discretion to find that Michigan was not a reasonably convenient forum. So, while *Abel* does not compel the conclusion that Michigan is not a reasonably convenient place for trial in this case, it does suggest that a finding to that effect is a permissible exercise of discretion. Moreover, as noted above in text, at least one other court has found *Abel* to be instructive when exercising discretion under the Reasonably Convenient Place Statute. *See Banc of Am. Leasing & Cap., LLC*, 2011 WL 7788018, at *3 (citing *Abel*). Finally, while the Court concludes that *Abel* supports its ruling here, the Court's ruling neither depends upon nor rests upon *Abel*. The Court's ruling is based upon its independent assessment of whether Michigan is a reasonably convenient place for trial.

**a**

First, Rolls-Royce argues that the Court should find Michigan to be a reasonably convenient place for trial because the parties agreed to litigate in Michigan. In support of this argument Rolls-Royce quotes from *Adams*: "[A]bsent a showing that trial in the 'contractual forum' will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of his day in court … there is no basis concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." (Resp. to Objections, ECF No. 18, PageID.637 (quoting *Adams*, 724 N.W.2d at 736–37).) But this quote does not appear in the Michigan Court of Appeals' discussion of the Reasonably Convenient Place Statute. Instead, the Court of Appeals made the quoted statement when discussing the defendants' "constitutional" objections to personal jurisdiction. *Adams*, 724 N.W.2d at 736.

That location of the quote matters because the constitutional and statutory standards are materially different. As the Court of Appeals explained, "[s]tate and federal courts are virtually uniform in the conclusion that enforcement of a forum selection clause that was validly entered into does not violate due process as long as a party will not be deprived of its day in court." *Id.* However, the Reasonably Convenient Place Statute precludes enforcement of an otherwise-valid forum selection clause that forms the sole basis for personal jurisdiction if Michigan is not

a "reasonably convenient place for trial." Thus, the due process standard quoted by Rolls-Royce sheds essentially no light on whether Michigan is an appropriate forum under the Reasonably Convenient Place Statute.

Moreover, it is important not to assign too much weight under the Reasonably Convenient Place Statute to the fact that the parties agreed to litigate in Michigan. Indeed, that statute takes as a given that parties have agreed to litigate in Michigan, and it then requires a court to undertake its own additional and independent assessment as to whether Michigan is a reasonably convenient place for trial. To place great significance on the fact that the parties agreed to litigate in Michigan would run the risk of effectively reading out of the Reasonably Convenient Place Statute the independent requirement that Michigan be a reasonably convenient place for trial. Likewise, the *Cray* factors that guide a court's analysis under the Reasonably Convenient Place Statute do not focus on whether the parties agreed to litigate in Michigan. For all of these reasons, the Court concludes that Michigan is not a reasonably convenient forum simply because the parties agreed to litigate here.

**b**

Rolls-Royce next argues that three cases involving the Reasonably Convenient Place Statute confirm that Michigan is a reasonably convenient place for trial in this case. The Court disagrees.

29

Rolls-Royce begins by citing *United American Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741 (E.D. Mich. 2014). (*See* Resp., ECF No. 14, PageID.509).  In that case, the defendants argued that the Reasonably Convenient Place Statute precluded enforcement of a forum selection clause.  But the judge in that case ruled that the statute did not apply and proceeded to evaluate the forum selection clause under *federal* law.[11] *See Backs*, 997 F.Supp.2d at 747.  And the federal standard applied in *Backs* differs from the standard under the Reasonably Convenient Place Statute.  Under the federal standard, a court asks, among other things, whether the designated forum is "seriously inconvenient." *Id.* (quoting *Wong*, 589 F.3d at 828).  For these reasons, *Backs* sheds no meaningful light on whether a trial in Michigan would satisfy the Reasonably Convenient Place Statute.

---

[11] As explained above, Michigan law – including the Reasonably Convenient Place Statute – governs the enforceability of a forum selection clause in a diversity action where the clause forms the sole basis for the assertion of personal jurisdiction over the defendant. *See Stone Surgical*, 858 F.3d at 388 ("When a federal court sitting in diversity *exercises personal jurisdiction over a party pursuant to a forum-selection clause*, state law controls the question of whether that clause is enforceable.") (emphasis added).  In all other diversity cases, federal law governs whether a forum selection clause is enforceable. *See Wong*, 589 F.3d at 828 & n. 26 (explaining that "in [] diversity suit[s], the enforceability of [a] forum selection clause is governed by federal law" but also acknowledging that "state law governs when the clause is raised as the sole basis for personal jurisdiction over the defendant."). *Backs* did not involve a motion to dismiss for lack of personal jurisdiction and/or any argument as to whether the forum selection clause formed the sole basis for the exercise of personal jurisdiction over the defendant.  In those circumstances, federal law governed the enforceability of the forum selection clause.

Rolls-Royce turns next to *Umlaut, Inc. v. P3 USA, Inc.*, 2020 WL 4016098 (E.D. Mich. July 15, 2020). (*See* Resp., ECF No. 14, PageID.512.)   In that case, Umlaut, a Colorado corporation with its principal place of business in Michigan, sued one of its competitors, P3 USA, Inc., and several of P3's employees, for unfair competition and theft of trade secrets.   Umlaut further alleged that P3's employees, who had formerly been employed by Umlaut, breached their prior employment agreements with Umlaut.   P3's employees, who were not residents of Michigan, moved to dismiss for lack of personal jurisdiction.   Umlaut responded that the employees were subject to jurisdiction here because their employment agreements with Umlaut contained a Michigan forum selection clause.   The employees replied that the Reasonably Convenient Place Statute precluded enforcement of that clause. They insisted that "Michigan [was] not a 'reasonably convenient place for trial' because they would have to travel to Michigan from Texas and Oregon." *Umlaut*, 2020 WL 4016098, at *3.   The court held that the forum selection clause was enforceable, reasoning that "neither [defendants'] residence in other states nor [their] alleged lack of contacts with [Michigan] prevents the forum from being reasonably convenient." *Id.*

*Umlaut* is not contrary to this Court's conclusion that Michigan is not a reasonably convenient forum for this action.  As explained in detail above, this Court did not rest that conclusion on the facts that ACS is located in a different state and

that ACS lacked contacts with Michigan.  Instead, the Court found that Michigan was neither a reasonably convenient nor logical forum because none of the witnesses, evidence, contracts, projects, and/or people involved in this case are in Michigan and because none of the relevant conduct occurred here.

.       In contrast to this case, the dispute in *Umlaut* did have connections to Michigan.  Most importantly, Umlaut alleged that P3 solicited one of its automotive customers in Auburn Hills, Michigan, and that two of P3's employees who were named as defendants were connected to that solicitation. *See Umlaut*, 2020 WL 4016098, at *2.  In the court's words, P3 and its employees "reached into Michigan as part of their tortious scheme to unfairly compete against Michigan." *Id.* at *6. There was also reason to believe that representatives of the Michigan customer solicited by P3 and its employees would have been witnesses at trial.  Under all of those circumstances, Michigan was a logical place to hold the trial in *Umlaut*.  Since those circumstances are missing here, *Umlaut* does not strongly support Rolls-Royce's argument that Michigan would be a sensible forum for the trial in this action.

Finally, Rolls-Royce points to an unpublished *per curiam* decision of the Michigan Court of Appeals, *Americorp Financial, L.L.C. v. Bacdamm Investment Group, Inc.*, 2014 WL 198929 (Mich. Ct. App. Jan. 16, 2014). (*See* Resp., ECF No. 14, PageID.513.)  There, a Michigan company leased a robotic dispensing system to

a pharmacy based in the Virgin Islands. *See id.* at *1.  The lease agreement included a Michigan forum selection clause. *See id.*  After the pharmacy stopped making payments, the Michigan leasing company sued for breach of the lease. *See id.*  The defendants – the pharmacy's principals – moved to dismiss.  In support of that motion, they argued that the forum selection clause was unenforceable under the Reasonably Convenient Place Statute. *See id.*  The Michigan Court of Appeals disagreed and held that Michigan was a reasonably convenient forum. *See id.* at *4.

Again, *Americorp Financial* is distinguishable here.  *Americorp Financial* included some witnesses in Michigan.  Indeed, the Court of Appeals highlighted that fact.  When that court analyzed the *Cray* private interest factors, it stressed that "[t]he cost of having [defendants] travel to Michigan is no more onerous *than having plaintiff's witnesses travel outside of Michigan*." *Id.* at *3 (emphasis added).[12]  The fact that some witnesses were located in Michigan underscores that Michigan was a logical forum for that action.  The same cannot be said here.  There is nothing before the Court indicating that *any* witnesses are located in Michigan.  Thus, this case lacks an important connection to Michigan that was present in *Americorp Financial*.

_____

[12] The trial court in *Americorp Financial* appeared to conclude that no witnesses "who were going to be relevant to the real issues in the case" were located in Michigan. *See Americorp Financial*, 2014 WL 198929 at *3.  The Court of Appeals, however, was unwilling to discount the relevance of the fact that Americorp Financial had witnesses who were located in Michigan and who would have had to leave the state if the case was tried elsewhere.

**c**

Finally, Rolls-Royce seems to argue that Michigan is a reasonably convenient forum for trial because it is at least as convenient as other potential fora.  Rolls-Royce stresses, for instance, that its "Minnesota employees and documents can get to Michigan as (or more) quickly than Texas." (Resp. to Objections., ECF No. 18, PageID.636.)  The Court disagrees with this line of reasoning.

As an initial matter, it is not clear that an analysis of convenience under the Reasonably Convenient Place Statute may properly include a comparison between the convenience of a Michigan forum and an out-of-state forum.  The language of the statute does not invite such a comparison.  The statute directs a court to determine whether Michigan is "a reasonably convenient place" for trial; it does not say anything about Michigan's *relative* convenience vis-à-vis *other* fora.  And it is not obvious that the alleged inconvenience of other fora is relevant to whether Michigan is "a convenient place" for trial.  However, as noted above, the Michigan Court of Appeals has imported the *forum non conveniens* analytical framework into the convenience analysis under the Reasonably Convenient Place Statute, and that framework does compare the relative convenience of alternative fora. *See Adams*, 724 N.W.2d at 734 (explaining that in conducting a *forum non conveniens* analysis, a court "must consider," among other things, "whether a more appropriate forum exists.").

34

In any event, the Court does not accept Rolls-Royce's contention that Michigan is just as convenient as the other potential fora.  As explained in detail above, if this case was tried here, *all* of the witnesses for *both* parties would have to travel here, and *all* of the evidence to be presented by *both* parties would have to be sent here.  In contrast, if this case was tried in other potential fora, at least some of the witnesses would not have to travel and some of the evidence would not need to be transported.  For instance, if the case was tried in Texas, ACS's employee-witnesses and evidence could stay put.  Conversely, if the case was tried in Minnesota, Rolls-Royce's employee-witnesses and evidence would not have to travel.  Finally, if the case was tried near one of the Project Sites, the witnesses who are located there – and Rolls-Royce acknowledges that there are such witnesses (*see* Resp. to Objections, ECF No. 18, PageID.636) – would not have to travel.  Because Michigan is the only possible forum that would require all witnesses to travel and all evidence to be transported, it would not be a reasonably convenient forum even if convenience was measured on a relative basis.

## C

For all of the reasons explained above, the Court concludes that Michigan is not a "reasonably convenient place for trial" under the Reasonably Convenient Place Statute.  Accordingly, the Michigan Forum Selection Clause is not a valid basis for

jurisdiction over ACS.  Because there is no other basis for jurisdiction over ACS, this action cannot proceed before this Court.

**V**

For the reasons explained above, the Court **SUSTAINS** ACS's objections to the R&R (ECF No. 17).  Accordingly, the Court **GRANTS** ACS's motion to dismiss for lack of personal jurisdiction (ECF No. 9).  Rolls-Royce's claims against ACS are thus **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 3, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 3, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126